In re STOCKBRIDGE FUNDING COR-PORATION, n/k/a Stockbridge Mortgage Corp., Debtor.

David R. KITTAY, as Chapter 11 Trustee for Stockbridge Funding Corporation, on behalf of the Estate and all Stockbridge investor claimants, Objectant and Counterclaim–Plaintiff,

v.

Battle FOWLER, Claimant and Counterclaim–Defendant.

Bankruptcy No. 91 B 10069 (FGC).
Adv. No. 92–9398A.

United States Bankruptcy Court, S.D. New York.

April 22, 1993.

D. Kittay, White Plains, NY, for Stockbridge.

A. Moskowitz, Anderson Kill, Olick & Oshinsky, New York City, for Battle Fowler.

P. Sprung, C. Chung, New York City, U.S. Attorney's Office.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RECOGNIZING A "BANKRUPTCY CRIMES INVESTIGATION PRIVILEGE"

FRANCIS G. CONRAD, Bankruptcy Judge.

### Findings of Fact [1]

1. David R. Kittay ("Kittay") is the duly appointed Chapter 11 Trustee for debtor Stockbridge Funding Corp. ("Stockbridge"), a mortgage broker and mortgage banker which collapsed in January 1991.

2. During the course of his trusteeship, Kittay performed his obligations under 18 U.S.C. § 3057(a) on several occasions, conferring with the United States attorney regarding cases where he reasonably believed that a bankruptcy crime may have been committed or that a criminal investigated should be had.

3. On July 8, 1992, Kittay, as Trustee, on behalf of the estate and, pursuant to court order, on behalf of Stockbridge's investors, principally Eastern European immigrants, filed a counterclaim against the law firm of Battle Fowler, alleging seven claims for relief, including legal malpractice and aiding and abetting securities laws violations committed by one of Stockbridge's employees. Battle Fowler has moved to dismiss Kittay's claims on behalf of investors, and moved to dismiss or in the alternative for summary judgment as to Kittay's claims on behalf of the estate. Both motions have been denied.

4. In connection with litigation of Kittay's counterclaim, Battle Fowler sought discovery from Kittay of written and oral communications regarding his investigation of possible bankruptcy crimes and his communications with the government about such possible crimes. Kittay responded that such communications were privileged under the work product doctrine and under a "bankruptcy crimes investigation privilege" regarding his performance of his duties under 18 U.S.C. § 3057(a). Kittay also asserted that he was withholding documents in observance of the government's assertion of the law enforcement privilege and that, in any event, 18 U.S.C. § 3057(a) gave him standing to invoke the law enforcement privilege on his own motion.

5. The United States attorney has informed the Court that it is involved in a continuing criminal investigation of the advisors to Stockbridge and that the subjects of that investigation include Peter LaVigne, an attorney with Battle Fowler, and the Battle Fowler firm itself.

6. The United States attorney, on behalf of itself, the Postal Inspection Service and the Securities Exchange Commission, invoked the law enforcement privilege with respect to its ongoing criminal investigation, and, having reviewed the voluminous submissions by all parties, including affirmations from United States Attorney Roger Hayes, the S.E.C., the Postal Inspection Service and an *in camera* submission from Assistant United States Attorney Alan Brudner, the prosecutor in this matter, in

---

**1.** I have subject matter jurisdiction over this controversy under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A) and (C). These findings of fact and conclusions of Law are under F.R.Bankcy.P. 7052 which incorporates F.R.Civ.P. 52, and amplify and supplement my 15 Aug. 1992 Bench Ruling.

an oral bench ruling I upheld the assertion of the law enforcement privilege by the government.

7. Kittay's performance of his obligations under 18 U.S.C. § 3057 has involved several potential crimes. Some relate to the subject matter of his litigation with Battle Fowler; some do not.

8. Revelation of a bankruptcy trustee's or bankruptcy judge's law enforcement work would impede that work, and could subject them to risk of retaliation or intimidation. Moreover, a bankruptcy trustee in the ordinary performance of his other duties often obtains access to witnesses and other evidence and information that the government would not otherwise find or investigate.

9. There will be many persons who will be discouraged from giving a trustee evidence of criminal activity if they know that their participation will become public knowledge or if they know that the putative criminal defendants may obtain in civil litigation their identities and the details of the information given to a trustee.

10. Where a bankruptcy trustee or bankruptcy judge has cooperated in a criminal investigation, to permit a putative criminal defendant or other persons to obtain information regarding an ongoing criminal investigation from a trustee or judge would also undermine the government's assertion of valid law enforcement, informer or other privileges and would compromise the confidentiality of the criminal proceedings.

### Conclusions of Law

1. 18 U.S.C. § 3057 states:

(a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under Chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, *shall* report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

(b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of the public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

(Emphasis ours)

The duties of a bankruptcy trustee under this statute are the same as those of a bankruptcy judge.

2. It is imperative that when a bankruptcy trustee or bankruptcy judge performs his or her statutory duty under 18 U.S.C. § 3057(a) in connection with possible bankruptcy crimes, such activities should be exempt from disclosure except in extraordinary circumstances. Under the statutory scheme created by 18 U.S.C. § 3057(a) respecting bankruptcy related crimes, a bankruptcy trustee or bankruptcy judge *is* a part of law enforcement as much as an assistant United States attorney or an F.B.I. agent.

3. Recognition of a "bankruptcy crimes investigation privilege" is consistent with Federal Rule of Evidence 501, which provides in relevant part that "privilege ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." As stated in the legislative history:

Rule 501 is not intended to freeze the law of privilege as it now exists. The phrase "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" is intended to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.

Statement by House Subcommittee Chairman, 1974 U.S.Cong. & Ad.News 7051, 7110, 93d Cong.2d Sess. 1974.

■ 4. In recognizing today a "bankruptcy crimes investigation privilege" and applying it to the facts of the case at hand, I do not purport to establish its outer boundaries or applications. I do hold that in these circumstances, the bankruptcy crimes investigation privilege shields from discovery Trustee Kittay's and his attorney's written and oral communications that were created or took place in connection with Kittay's investigating potential bankruptcy crimes or reporting such potential crimes to the United States attorney or other law enforcement agencies pursuant to 18 U.S.C. § 3057(a).

5. I leave for another day the issue of whether this privilege is absolute or qualified, noting that in this matter Battle Fowler has failed to establish any substantial need to discover these communications in light of the many other avenues available for discovery of the facts underlying Kittay's claims and other available impeachment material regarding Eugene R. Karczewski and Eugene F. Karczewski, principals of Stockbridge. I also note that Battle Fowler seeks disclosure of Kittay's materials in connection with a civil case. *See United States v. Nixon,* 418 U.S. 683, 711 n. 19, 94 S.Ct. 3090, 3109 n. 19, 41 L.Ed.2d 1039 (1974).

6. I believe recognition of this privilege is consistent with the standards articulated by the Supreme Court in analyzing other claims to novel privileges. *See generally, Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (grand jury proceedings); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (deliberative intra-agency documents); *Nixon, supra* (executive privilege); *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (jury deliberations).