**In re Douglas L. HEINSOHN, Debtor.**

**Joseph B. Kirk, Plaintiff,**

**v.**

**William T. Hendon, Defendant.**

**Bankruptcy No. 90–31655.**
**Adversary No. 97–3208.**

United States Bankruptcy Court,
E.D. Tennessee.

March 16, 1999.

J. Mikel Dixon, Knoxville, Tennessee.

John A. Lucas, Martin B. Bailey, Hunton & Williams, Knoxville, Tennessee.

### *MEMORANDUM*

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

This adversary proceeding involves state law tort claims of malicious prosecution and defamation asserted by the plaintiff, Joseph B. Kirk, and removed to this court by the defendant, William T. Hendon, who was the chapter 7 trustee in the underlying bankrupt-cy case of debtor Douglas L. Heinsohn. Before the court are the plaintiff's motion to remand or for abstention and motion to strike, and the defendant's motion to dismiss. For the following reasons, the plaintiff's motions will be denied and the defendant's motion to dismiss will be granted.

### I.

The complaint filed on September 24, 1997, in the Circuit Court for Knox County, Tennessee alleges that the plaintiff was indicted for bankruptcy fraud and conspiracy to commit bankruptcy fraud by the Federal Grand Jury for the U.S. District Court for the Eastern District of Tennessee on March 6, 1996, and upon trial was acquitted of all charges on November 25, 1996, at the close of the prosecution's proof. It is further averred that "[a]t all times material to the criminal charges against Joseph B. Kirk, the defendant, William T. Hendon was the bankruptcy trustee for the relevant estate, and the principal witness against the plaintiff." For his malicious prosecution cause of action, the plaintiff alleges that the defendant "initiated or procured the criminal proceedings" against him "for an improper purpose, without probable cause," and "the proceedings were terminated favorably for the person thus prosecuted." As for the defamation of character count, the plaintiff "relies upon the factual and legal allegations contained in the first count for malicious prosecution" and additionally alleges that "defendant communicated to persons other than the plaintiff defamatory statements concerning the plaintiff that were defamatory, as that term is defined in law." Specifically, the plaintiff avers that "[t]he defamatory statements alleged in this complaint were the allegations of criminal misconduct against the plaintiff made by the defendant." The plaintiff seeks $5 million in compensatory and punitive damages from the defendant.

On October 15, 1997, the defendant filed a notice of removal of the plaintiff's state court action, thereby commencing this adversary proceeding. In the notice, the defendant states that in accordance with his responsibilities as trustee under 18 U.S.C. § 3057, he referred the debtor "to the U.S. Trustee for

consideration of any criminal activity by the debtor," and "[t]he FBI and the U.S. Attorney's office subsequently instituted a criminal investigation, which led to indictments of Heinsohn and the plaintiff...." The defendant alleges that the state court action "is a civil proceeding arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11," the court "therefore has subject matter jurisdiction under 28 U.S.C. § 1334(b)," and "[b]ecause the court has original subject matter jurisdiction under 28 U.S.C. § 1334, it has removal jurisdiction under 28 U.S.C. § 1452." Thereafter, the defendant filed an answer to the complaint on October 21, 1997, denying the material allegations in the complaint and asserting as a defense, *inter alia*, that the defendant "is immune from this lawsuit under both an absolute and qualified immunity and/or privilege because he acted at all times as an officer of the court during judicial proceedings."

In response to the removal, the plaintiff filed on November 13, 1997, a motion to remand and in the alternative for abstention contending that the court "does not have subject matter jurisdiction of the removed action" and the removal notice is defective because "[r]emoval of this action should be to the District Court as set out in Section 1452(a)" and "the notice does not include a statement indicating whether the removed matter is core or non-core, and if non-core, whether the parties consent to entry of final orders or judgments by the Bankruptcy Judge, as required by Bankruptcy Rule 9027 and 28 U.S.C. § 1452." Alternatively, the plaintiff asserts that "this case is appropriate for mandatory or discretionary abstention." On November 24, 1997, the defendant filed an amended notice of removal containing the allegation that "this proceeding is a core proceeding."

On November 28, 1997, the defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Fed.R.Bankr.P.

7012(b), contending that both the malicious prosecution and defamation counts of the complaint must be dismissed on the ground of absolute immunity since the defendant acted in his capacity as trustee and as an officer of the court. The motion also asserts that the alleged defamatory statements were made in the course of judicial proceedings and therefore the defendant enjoys qualified immunity under state law.

On December 15, 1997, the plaintiff filed a motion to strike the defendant's amended notice of removal on the ground that neither leave of court nor consent of the adverse party was granted prior to its filing. The plaintiff stated that he does not consent to the amendment and that leave by the court to amend "cannot be granted because the amendment attempts to add an essential allegation to the notice of removal which cannot be added after the expiration of the statutory period of time for filing such notice."

Prior to ruling on the parties' various motions, the plaintiff filed a motion for withdrawal of reference on December 17, 1997. Pursuant to 28 U.S.C. § 157(d) and Fed. R.Bankr.P. 5011(a), this court entered an order on December 19, 1997, directing the bankruptcy clerk to transmit the plaintiff's motion for withdrawal of reference to the district court for disposition. Pending that decision, the court stayed all matters, including the plaintiff's motion to remand or for abstention, the defendant's motion to dismiss, and the plaintiff's motion to strike. By order entered September 29, 1998, the district court denied the motion to withdraw reference and directed this court to rule upon the pending motions. Oral arguments on the motions having been made, the issues raised by the parties are now ready for resolution.

## II.

The court will first consider the plaintiff's motion to strike. Fed.R.Bankr.P. 9027(a)(1)[1] provides in pertinent part that a

---

1. Subsection (a)(1) of Fed.R.Bankr.P. 9027 states as follows:

   A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending. The notice shall be

signed pursuant to Rule 9011 and contain a short and plain statement of the facts which entitle the party filing the notice to remove, contain a statement that upon removal of the claim or cause of action the proceeding is core or non-core and, if non-core, that the party

notice of removal shall "contain a statement that upon removal of the claim or cause of action the proceeding is core or non-core and, if non-core, that the party filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy judge." Because no such statement was contained in the defendant's notice of removal filed on October 15, 1997, the plaintiff asserts that the notice of removal fails to "allege an essential jurisdictional element" and, as a result, is "fatally defective." The plaintiff notes that leave to amend the notice of removal was not sought prior to the defendant's filing of the amended notice of removal on November 24, 1997, and that, in any event, filing of the amended notice was outside the 30–day time period imposed by Fed. R.Bankr.P. 9027(a)(3) for removing civil actions initiated after commencement of a bankruptcy case. In support of these positions, the plaintiff cites a plethora of cases for the general propositions that removal statutes are to be strictly construed, *see, e.g., Holder v. City of Atlanta,* 925 F.Supp. 783, 784 (N.D.Ga.1996); and essential jurisdictional allegations may not be supplied after the statutory period for filing a removal notice or petition has run. *See, e.g., Denton v. Wal–Mart Stores, Inc.,* 733 F.Supp. 340, 341 (M.D.Fla.1990) (removal petition insufficient to confer jurisdiction on court where it failed to aver defendant corporation's principal place of business and that amount of controversy exceeded jurisdictional amount) and *Crawford v. Fargo Mfg. Co.,* 341 F.Supp. 762, 763 (M.D.Fla.1972) ("The court is without jurisdiction to allow amendments to supply missing allegations after the expiration of the statutory period but may allow amendments to cure defective allegations.").

Characterizing the motion as "hypertechnical," the defendant responds by observing that the notice of removal contains all the

facts necessary to support a legal conclusion that this is a core proceeding. As such, he argues that any failure to specifically state whether the proceeding is core or non-core is only a technical defect which can be corrected by amendment even after expiration of the 30–day removal time period, citing *Northern Ill. Gas Co. v. Airco Indus. Gases,* 676 F.2d 270 (7th Cir.1982) (untimely amendment filed without leave of court was effective to correct technically defective removal petition which failed to allege nominal party status of excluded defendant since the state court record attached to the removal petition contained necessary factual information to establish removal jurisdiction).

The court has been unable to locate a reported decision which has considered the precise issue of whether the failure to designate a proceeding's core or non-core status in a notice of removal as required by Fed. R.Bankr.P. 9027(a)(1) is a fatal defect which deprives the court of jurisdiction to hear the matter. However, a similar question arises when parties fail to comply with an identical mandate contained in Fed.R.Bankr.P. 7008(a) which requires complaints, counterclaims, cross-claims, and third-party complaints in adversary proceedings to "contain a statement that the proceeding is core or non-core...."[2] When presented with this issue, the vast majority of courts have held that dismissal for this reason alone is unjustified. *See Carlson v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Ill. (In re Carlson),* 202 B.R. 946, 948 (Bankr.N.D.Ill.1996) (complaint that contained no jurisdictional statement or allegation that proceeding is core or non-core was not a "jurisdictional defect" since alleged facts provided a basis for assumption of jurisdiction); *Union Planters Bank of Central Ark., N.A. v. Jagitsch (In re Jagitsch),* 201

filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy judge, and be accompanied by a copy of all process and pleadings.

2. Fed.R.Bankr.P 7008(a) states as follows:
Rule 8 F.R.Civ.P. applies in adversary proceedings. The allegation of jurisdiction required by Rule 8(a) shall also contain a reference to the name, number, and chapter of the case under the Code to which the adversary proceeding relates and to the district and division where the case under the Code is pending. In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge.

B.R. 961, 963 (Bankr.E.D.Ark.1996) (Rule 7015 requires that leave of court be freely given to amend complaint to include a statement of whether matter was core or non-core); *Altchek v. Altchek (In re Altchek)*, 119 B.R. 31, 35 (Bankr.S.D.N.Y.1990) (leave granted to replead complaint with more definite statement and to allege whether claims were core or non-core); *Commercial Credit Plan v. Edwards (In re Edwards)*, 112 B.R. 30, 31 (Bankr.W.D.Mo.1990) ("Mandate of Rule 7008(a) is clear and omission of the 'core proceeding' designation, while potentially fatal, is not a mortal wound to the complaint but what can be healed through the amendment process of Rule 7015.") and *Painter v. First Fed. Sav. and Loan Ass'n of S.C. (In re Painter)*, 84 B.R. 59, 61 (Bankr. W.D.Va.1988) (Requirement of Rule 7008(a) that complaint contain allegation that matter is core or non-core "is technical in nature and certainly not fatal to the complaint."). *But see Gitlitz v. Society Bank (In re Gitlitz)*, 127 B.R. 397, 401 (Bankr.S.D.Ohio 1991) (absence of both jurisdictional plea and assertion of whether proceeding is core or non-core justified dismissal of complaint) and *Baumeister v. Douglas (In re Sunny Villa Nursing Home, Inc.)*, 1994 WL 518955 at *2 (Bankr. N.D.Ohio, August 19, 1994)(complaint dismissed on the basis that jurisdiction was not immediately clear).

█ This court similarly concludes that the defendant's failure to include in the original notice of removal a statement that the proceeding is core or non-core is not fatal. Notwithstanding plaintiff's argument to the contrary, the core/non-core statement is not an allegation of jurisdiction essential to removal. The statute which makes the core/non-core distinction, 28 U.S.C. § 157, "is not a jurisdictional statute" as Judge Jordan noted in denying plaintiff's motion to withdraw. This case was removed pursuant to 28 U.S.C. § 1452(a), the bankruptcy removal statute, which authorizes removal from state court to federal district court "if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." [3] Section 1334 of title 28 sets forth the scope of federal bankruptcy jurisdiction. *Sanders Confectionery Prod., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 482 (6th Cir.1992). Under this provision, the district court possesses original jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(a) and (b).[4] Thus, a statement is an essential jurisdictional allegation for removal purposes under § 1452(a) only if it describes or sets forth the basis for the district court's exercise of jurisdiction under § 1334. This information is supplied by Fed.R.Bankr.P. 9027(a)(1)'s directive that the notice of removal "contain a short and plain statement of the facts which entitle the party filing the notice to remove."

█ A statement designating a proceeding as core or non-core does not fall within this category of information because a proceeding's core/non-core status only becomes pertinent after it has been established that the proceeding falls within the district court's bankruptcy jurisdiction. "If a district court has bankruptcy jurisdiction over a case, 28 U.S.C. § 157(a) allows the court to refer the case to the bankruptcy court." *Sanders*, 973 F.2d at 482. Upon such referral, § 157(b) "provides guidance as to what matters within § 1334 jurisdiction may be heard and determined by bankruptcy judges, who are not Article III judges, and what matters may be heard and determined by district judges, who

---

**3.** 28 U.S.C. § 1452(a) states that:
A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

**4.** 28 U.S.C. § 1334(a) and (b) state as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

are Article III judges." *See* district court Memorandum and Order entered September 29, 1998, at p. 5. Therefore, while the core/non-core statement is relevant in ascertaining the extent of the bankruptcy court's authority, *see Biglari Import & Export, Inc. v. Nationwide Mut. Fire Ins. Co. (In re Biglari Import & Export, Inc.),* 142 B.R. 777, 781 n. 6 (Bankr.W.D.Tex.1992) ("The bankruptcy judge's authority to hear matters is defined by Section 157. . . ."); it has no bearing on whether the district court has jurisdiction. Because a proceeding's core/non-core status is not pertinent to a district court's jurisdiction over a bankruptcy matter, the failure to recite the status in the notice of removal is only a technical defect which may be cured, even after the time for removal has expired.[5]

■ Furthermore, to the extent it may be argued that core/non-core allegations are essential to the authority of the bankruptcy court to hear the matter, the court concurs with the defendant's assertion that sufficient facts were set forth in the notice of removal and in the state court complaint, a copy of which was attached to the notice, from which the court can ascertain whether the proceeding is core or non-core. *See* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3733 (3rd ed. 1998) ("[I]t should be sufficient if the court is provided the facts from which removal jurisdiction can be determined."). The Sixth Circuit Court of Appeals has held that the liberal amendment standard of Fed.R.Civ.P. 15 ("leave shall be freely given") applies to allegations of jurisdiction in a removal notice. *See Tech Hills II Assoc. v. Phoenix Home Life Mut. Ins. Co.,* 5 F.3d 963, 969 (6th Cir.1993) and *Gafford v. General Elec. Co.,* 997 F.2d 150, 164 (6th Cir.1993). In *Tech Hills,* the defendant was granted leave to amend its removal petition to include allegations of individual partners' citizenship after time for removal had expired where diversity jurisdiction was alleged in the original petition and diversity in fact existed at time of the original petition. *Tech Hills,* 5 F.3d at

969. Similarly, in *Gafford,* the defendant was permitted to cure its failure to affirmatively allege its principal place of business after expiration of the removal time period. *Gafford,* 997 F.2d at 164 (citing *Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 153 n. 5 (D.N.J.1990) ("The information submitted after the issue of the removal's propriety was raised constitutes an amendment of the petition. Because diversity of the parties was alleged in the original petition, defendant could amend by providing allegations of greater specificity even after the thirty day limit to file a new petition had expired.")).

In both *Tech Hills and Gafford,* the Sixth Circuit quoted extensively from *Stanley Elec. Contractors, Inc. v. Darin & Armstrong Co.,* 486 F.Supp. 769, 772–73 (E.D.Ky.1980), to explain its rationale:

> Better if the jurisdiction in fact exists, to permit the petition for removal to be amended to reflect it. It appears that the time has come to reexamine this entire matter and expressly adopt the approach . . . that amendments to the jurisdictional allegations of removal petitions should be permitted in the same manner as amendments to any other pleading.
>
> . . . .
>
> It must be made clear that this opinion is not to be construed as departing in any way from the precept that the facts giving rise to federal jurisdiction must be strictly construed and alleged with particularity. The decision holds only that the time has come to apply the principles of modern pleading relating to amendments to removal petitions, and that amendments should be permitted, to implement the spirit of the statute and rules cited herein, where the jurisdictional facts do indeed exist, and the parties are in law entitled to invoke the jurisdiction of the federal court.
>
> . . . .
>
> Virtually all of the commentators and the great weight of judicial authority favor the rule adopted by this decision. Indeed,

---

5. It is worth noting that section 157 of title 28 was enacted as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. However, the mandatory core/non-core statement was not added to Fed.R.Bankr.P. 9027(a)(1) until 1991, several years later, lending additional support for the conclusion that the failure to include such a statement would not create a jurisdictional defect per se.

the strict view reflected by the earlier cases hereinabove cited has been expressly criticized.

For the above reasons, the court holds that a petition for removal may be amended under the same considerations governing the amendment of any other pleading containing jurisdictional allegations.

*Tech Hills,* 5 F.3d at 969; *Gafford,* 997 F.2d at 164. It would be anomalous for this court to hold that while general allegations of jurisdiction in a removal notice may be amended to provide greater specificity, a conclusory allegation of jurisdiction may not be added even though the factual basis for the jurisdictional conclusion was set forth in the original notice.

█ Finally, with respect to the question of whether it was necessary for the defendant to file a formal motion for leave to amend prior to filing its amended removal notice, the court notes that the Sixth Circuit Court of Appeals in *Gafford* observed that it saw no point in requiring the defendant to file a formal amended removal petition since any deficiency in the original removal petition had been cured by subsequent affidavits supplied by the defendant at a jurisdiction hearing. *See Gafford,* 997 F.2d at 165 n. 6. Thus, while it would have been preferable for the amendment to have been made upon motion in accordance with Fed.R.Civ.P. 15(a), the court concludes that the failure to do so does not render the amendment ineffectual. Any deficiency in the original removal notice having been cured by the amendment, the plaintiff's motion to strike will be denied.

## III.

The court will next consider the plaintiff's motion to remand in which he asserts that the court does not have subject matter jurisdiction of the removed action.[6] In the motion, plaintiff challenges the jurisdiction of both the district court and the bankruptcy court to hear this action and as noted by Judge Jordan, at times blurs the distinction between the two. Stated previously, the scope of district court jurisdiction over bankruptcy matters is governed by 28 U.S.C. § 1334(a) and (b). As set forth in these statutes, federal district courts have original jurisdiction over all cases under title 11 of the United States Code and all civil proceedings arising under title 11, or arising in or related to cases under title 11. *See* 28 U.S.C. § 1334(a) and (b); *Sanders,* 973 F.2d at 482. Thus, § 1334 grants jurisdiction to the district court over four types of bankruptcy

---

6. The plaintiff claims in his motion that "[r]emoval of this action should be to the District Court as set out in Section 1452(a)". However, the plaintiff acknowledges in his memorandum in support that "there is authority for direct removal to Bankruptcy Court." Indeed, "[t]he position endorsed by the majority of courts which have published opinions on this issue is that the reference to 'district courts' in 28 U.S.C. § 1452(a) encompasses bankruptcy courts." *Plowman v. Bedford Fin. Corp. (In re Plowman),* 218 B.R. 607, 612 n. 4 (Bankr.N.D.Ala.1998). *See also Gianakas v. Exchange Nat'l Bank of Chicago (In re Gianakas),* 56 B.R. 747, 750-53 (N.D.Ill.1985) (providing an excellent analysis of the issue); *E.F. Wonderlic and Assoc. v. Parma, Inc. (In re Tandem Enterprises),* 124 B.R. 283, 284 n. 2 (Bankr.N.D.Ill.1991) ("A case is removed to the district court when it is removed to a unit thereof—*i.e.* the bankruptcy court.") and *Brizzolara v. Fisher Pen Co.,* 158 B.R. 761, 767 (Bankr.N.D.Ill.1993) ("Since bankruptcy judges collectively comprise a unit of the District Court and are judicial officers of that court who are assigned authority over bankruptcy matters by District Court orders of reference, cases may be removed to them, and such cases are considered to have been removed to a unit of the District Court."). *Cf. Cook v. Cook,* 215 B.R. 975, 977 n.

1 (Bankr.E.D.Mich.1997) (while the defendant may have made a technical error in removing the action to bankruptcy court rather than district court, it was a mistake which deserved to be ignored since the matter would have been immediately referred to bankruptcy court as a matter of course).

Furthermore, because Fed.R.Bankr.P. 9027(a) provides that a notice of removal is to be filed with the clerk and Fed.R.Bankr.P. 9002(3) defines "clerk" for purposes of the rules as "the court officer responsible for the bankruptcy records in the district," a notice of removal is properly filed with the bankruptcy clerk. *See Aztec Indus., Inc. v. Standard Oil Co., (In re Aztec Indus., Inc.),* 84 B.R. 464, 468 (Bankr.N.D.Ohio 1987).

The jist of the plaintiff's position is that he desires the district court in the first instance to consider whether "there is a sufficient bankruptcy relationship to satisfy jurisdictional requirements." This argument, however, was mooted by the district court's memorandum of September 29, 1998, which directed this court to rule on the issue of whether subject matter jurisdiction exists.

matters: (1) cases under title 11, *i.e.*, the bankruptcy case itself; (2) proceedings arising under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11. *Beneficial Nat. Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.),* 220 B.R. 932, 942 (Bankr.E.D.Tenn.1998).

Notwithstanding the district court's original jurisdiction over these matters, 28 U.S.C. § 157(a) authorizes a district court to refer its grant of jurisdiction under § 1334 to bankruptcy judges, who are "judicial officer[s] of the district court." *See* 28 U.S.C. § 151; *Seale v. Home Cable Concepts, Inc, (In re Best Reception Systems, Inc.),* 219 B.R. 980, 984 (Bankr.E.D.Tenn.1998). The district court for the Eastern District of Tennessee, like every other district court in the country, has made this referral. See standing order entered July 13, 1984, referring "all cases under title 11 of the United States Code and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for this district.

Even though the referral encompasses the entire scope of the district court's jurisdiction under § 1334 (*compare* 28 U.S.C. § 1334(a) and (b) with 28 U.S.C. § 157(a)), bankruptcy judges are not empowered to exercise the full extent of judicial power that district courts possess under § 1334. *In re Best Reception Systems, Inc.,* 220 B.R. at 943 (citing *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1143–44 (6th Cir. 1991)). With respect to the first three categories of jurisdiction outlined above, *i.e.,* cases under title 11 and proceedings arising under title 11 or arising in a case under title 11, bankruptcy judges are vested with full judicial power and thus may enter final orders and judgments, subject of course to traditional appellate review. *See* 28 U.S.C. § 157(b)(1).[7] Subsection (b) of § 157 denominates these three categories as "core proceedings." However, with respect to the last

category of bankruptcy jurisdiction granted the district court under § 1334(b), proceedings related to cases under title 11 which § 157(b) characterizes as "non-core proceedings," a bankruptcy judge has only limited authority. While the proceeding is still referred to the bankruptcy judge, the bankruptcy judge acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. *Maitland v. Mitchell (In re Harris Pine Mills),* 44 F.3d 1431, 1436 (9th Cir.1995). The bankruptcy judge may not enter final judgments without the consent of the parties, and the bankruptcy court's findings of fact and conclusions of law are subject to *de novo* review by the district court. *Id.*

■■ To state it another way, the district court's and bankruptcy court's subject matter jurisdiction is coextensive with respect to core proceedings. However, absent consent of the parties, a bankruptcy court does not have subject matter jurisdiction over non-core, *i.e.,* "related," proceedings although such proceedings are still within a district court's jurisdiction. *Sanders,* 973 F.2d at 483. Interestingly, the bankruptcy judge rules on whether a particular proceeding is a core proceeding under § 157(a) or is otherwise related to a case under title 11. *Id.* (citing 28 U.S.C. § 157(b)(3)). In doing so, the court must look at both the form and the substance of the proceeding. *Id.* (citing *In re Wolverine Radio Co.,* 930 F.2d at 1144 and *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987)).

■ "While the above explains the different treatment core and noncore proceedings receive at the hands of the courts, 'no exact definition of the terms exist in the bankruptcy code.'" *In re Harris Pine Mills,* 44 F.3d at 1436 (citing *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.),* 916 F.2d 1444, 1449–50 (9th Cir. 1990)). Nonetheless, a non-exclusive list of examples of core proceedings is contained in 28 U.S.C. § 157(b)(2). As a general rule, "a core proceeding either invokes a substantive

---

7. Subsection (b)(1) of 28 U.S.C. § 157 vests bankruptcy judges with full judicial power to: [H]ear and determine all cases under title 11 and all core proceedings arising under title 11,

or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Sanders,* 973 F.2d at 483. The fact that the claim raises issues of state rather than federal law does not by itself determine that it is not a core proceeding. *In re Hildebrand,* 205 B.R. 278, 283 (Bankr. D.Colo.1997). "Congress specifically provided that the 'determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.'" *Id.* (citing 28 U.S.C. § 157(b)(3)). "It is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference here." *Id.* (citing *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 169 (1st Cir.1987)).

■■■ The test for determining whether a proceeding is only "related" to the bankruptcy case and is thus non-core:

[I]s whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Best Reception Systems, Inc.,* 220 B.R. at 943 (quoting *Robinson v. Mich. Consol. Gas Co.,* 918 F.2d 579, 583 (6th Cir.1990)). Although "related to" jurisdiction is quite expansive, there are limits. "There must be some nexus between the action and the debtor's bankruptcy case." *Id.* (citing *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.),* 86 F.3d 482, 489 (6th Cir.1996), *as amended on denial of reh'g and reh'g en banc* (1996)).

■■■ In the case *sub judice,* the defendant asserts that the action against him is a core proceeding because it arose out of a trustee's administration of a bankruptcy estate. He argues that in making the criminal referral which subsequently led to the federal grand jury indictments of both the debtor and the plaintiff, he was merely carrying out his responsibilities under 18 U.S.C. § 3057, which states as follows:

(a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

(b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

The plaintiff, on the other hand, asserts that his lawsuit against the defendant is neither core nor related and therefore both the bankruptcy court and the district court are without subject matter jurisdiction. He argues that a criminal referral by a bankruptcy trustee which results in a subsequent suit for malicious prosecution has no relationship to a closed bankruptcy estate: it involves no right created by bankruptcy law and is one that can exist outside of bankruptcy. The plaintiff also contends that the outcome of the removed case can not conceivably have any impact on the handling and administration of the bankruptcy estate, nor any effect on the debtor's rights, liabilities, options, or freedom of action.

In support of the argument that his claims against the defendant are neither core nor related, the plaintiff cites the case of *Sullivan v. Pressman (In re Sullivan's Jewelry, Inc.),* 160 B.R. 124 (Bankr.E.D.Mo.1993). In

that case, a former officer of a corporate chapter 7 debtor sued the chapter 7 trustee's attorney in state court for the attorney's alleged slander. After the lawsuit was removed to bankruptcy court where the bankruptcy case was pending, the court remanded the case, concluding that it did not have even "related" jurisdiction because the proceeding was between two persons acting in their individual capacities, the outcome of which was not reasonably anticipated to have an effect on the administration of the bankruptcy case. *Id.* at 127.

The plaintiff argues that the same reasoning applies in the present case: that he has not pled that the defendant was acting in his official capacity in initiating the prosecution against him, and thus this is simply a state court action between two individuals which is unrelated to the bankruptcy proceeding. The plaintiff maintains that this case is no different than if the defendant were at fault for causing an automobile accident which resulted in injuries to the plaintiff and the defendant happened to be a trustee at the time of the accident.

In *Sullivan,* however, the court emphasized that no party had suggested that the incidents that formed the basis for the lawsuit either arose out of or were related to the bankruptcy proceeding. *Id.* Nor had the plaintiff therein alleged or the record suggested that the purportedly slanderous statements were made while the defendant was acting on behalf of the trustee. *Id.* The complaint in the present case plainly accuses the defendant of initiating or procuring criminal charges of "bankruptcy fraud and conspiracy to commit bankruptcy fraud" and of making defamatory "allegations of criminal misconduct" against the plaintiff while the defendant was serving as "the bankruptcy trustee for the relevant estate." In the notice of removal, the defendant cites his appointment as trustee and asserts that his actions were taken in accordance with his responsibilities as trustee. Thus, the *Sullivan* decision is readily distinguishable from the present case.

Although this court has been unable to locate any reported decision directly on point with the facts of this case, there are cases which support the defendant's argument that the causes of action against him are core proceedings because they arose out of his administration of the bankruptcy case. For example, in *Sanders* the Sixth Circuit Court of Appeals held that postpetition claims for common law fraud, securities fraud and RICO against a bankruptcy trustee by the parent corporation of the debtor and certain principals and shareholders of the parent were core proceedings since they would not have arisen but for the trustee's administration of the bankruptcy case.

> While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee for the trustee's administration of the estate could not. All claims against [the trustee] related to his conduct during the ... bankruptcy, and should be considered core proceedings.

*Sanders,* 973 F.2d at 483 n. 4. In *Harris Pine Mills,* the Ninth Circuit Court of Appeals concluded that because postpetition state law claims including fraud and RICO violations against a bankruptcy trustee and his agents by a purchaser of assets of the estate were based upon conduct inextricably intertwined with the trustee's sale of estate property, the claims constituted core proceedings. *In re Harris Pine Mills,* 44 F.3d at 1438. *See also In re Hildebrand,* 205 B.R. at 283 (relying upon *Sanders* and *Harris Pine Mills* in holding that bankruptcy court had core jurisdiction to determine postpetition state law claims asserted against the trustee by a prospective purchaser of estate property).

A case closely analogous to that before the court is *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.),* 155 B.R. 521 (9th Cir. BAP 1993), an adversary proceeding which arose out of the DeLorean Motor Company's bankruptcy filing. The chapter 7 trustee sued John DeLorean and his attorney, Howard Weitzman, alleging the fraudulent transfer of valuable real property in California from DeLorean to Weitzman. Upon a bench trial the district court ruled in favor of Weitzman and DeLorean, although DeLorean and the trustee eventually settled their dispute before entry of judg-

ment. Thereafter, Weitzman brought a malicious prosecution action in state court against the chapter 7 trustee and the attorneys who had represented the trustee in the fraudulent conveyance action. After the trustee removed the action to federal court, Weitzman moved for abstention and remand to state court. Although the bankruptcy court granted the motion on the ground that the proceeding was a "related" rather than a core proceeding, the bankruptcy appellate panel reversed, concluding that because the action arose from the efforts of officers of the estate to administer the estate and collect its assets, it impacted the handling and administration of the estate and was therefore a core proceeding. *Id.* at 525.[8]

■ This court concludes that the analysis in *DeLorean* is equally applicable to the present case. It was not happenstance that the complained of events took place while the defendant was a bankruptcy trustee. A trustee has a statutory duty under 18 U.S.C. § 3057 to notify the United States attorney and report all of the relevant facts and circumstances of the case if he believes that a crime has been committed or that further investigation is appropriate. *See In re Holder,* 207 B.R. 574, 584 n. 15 (Bankr.M.D.Tenn. 1997) (although the chapter 11 trustee's counsel was not the impetus for the criminal investigation of the debtor, he had a statutory duty under 18 U.S.C. § 3057 to report all the facts and circumstances of the case to the U.S. attorney). The directive in § 3057 is no less an obligation of the trustee than those that are specifically set forth in 11 U.S.C. § 704 which describe various duties of a

trustee. Thus, a trustee who makes a criminal referral is simply carrying out his administrative duties, no different than the trustee in *DeLorean* who filed the fraudulent conveyance action or the trustee in *Harris Pine Mills* who sold estate property. Although the plaintiff's causes of action for malicious prosecution and defamation would exist outside bankruptcy, they would not have arisen but for the defendant's obligations and conduct as a trustee. Accordingly, this is a core proceeding.

■ The fact that at the time of the filing of the state court lawsuit the bankruptcy estate had been fully administered and the case had to be reopened upon the filing of defendant's removal notice does not preclude the determination that this is a core proceeding. There is no bright-line rule dictating that once an estate has been fully administered a trustee cannot avail himself of the federal court's bankruptcy jurisdiction if he is subsequently sued for actions taken while administering the estate. The court having determined that this matter is a core proceeding, the plaintiff's motion to remand based on lack of subject matter jurisdiction will be denied.

As an alternative to his motion to remand, plaintiff argues that this case is appropriate for mandatory or discretionary abstention. *See In re Best Reception Systems, Inc.,* 220 B.R. at 951 (quoting *S.G. Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 708 (2nd Cir.1995) ("The act of abstaining presumes that proper jurisdiction otherwise exists.")). The court's determination of such a motion is

---

**8.** It must be noted that after Weitzman sued the trustee and his attorneys in California state court, the trustee filed an adversary proceeding in the Michigan bankruptcy court where the DeLorean bankruptcy case was pending, seeking to enjoin further prosecution of the Weitzman action. Weitzman responded by voluntarily dismissing the trustee from the lawsuit. Whereupon, the Michigan bankruptcy court vacated its preliminary injunction, reasoning that because the action was no longer against the trustee, it did not affect the administration or assets of the estate. *In re DeLorean Motor Co.,* 155 B.R. at 523.

Upon appeal, the Sixth Circuit Court of Appeals reversed, finding that the bankruptcy court erred in dismissing the injunction action. The

court concluded that because counsel for or representatives of the trustee are the functional equivalent of a trustee when they act at the direction of the trustee for the purpose of administering the estate or protecting its assets, they are entitled to the same protection. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1241 (6th Cir.1993).

It was in reliance on this Sixth Circuit Court of Appeals decision and its observation that the Weitzman lawsuit interfered with the administration of the estate (*id.* at 1243) that the Bankruptcy Appellate Panel concluded that Weitzman's state law malicious prosecution claim was a core proceeding. *In re DeLorean Motor Co.,* 155 B.R. at 525.

a core proceeding under 28 U.S.C. § 157(b)(2)(A). *Kuykendall v. Lawson (In re Lawson)*, 228 B.R. 195, 196 (Bankr. E.D.Tenn.1998) and *In re Best Reception Systems, Inc.*, 220 B.R. at 941.

The law of abstention is set forth in 28 U.S.C. § 1334(c) which provides:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

"Subsection (c)(1) addresses those situations when courts may abstain from hearing a proceeding while subsection (c)(2) defines those situations when courts must abstain from hearing a proceeding. The former is known as permissive abstention while the latter is referred to as mandatory abstention." *In re Best Reception Systems, Inc.*, 220 B.R. at 942.

■■■ As quoted above, § 1334(c)(2) provides that in order for mandatory abstention to apply, the proceeding must be "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." In other words, the proceeding must be non-core. *Lindsey v. Dow Chemical Co. (In re Dow Corning Corp.)*, 113 F.3d 565, 570 (6th Cir.1997), *cert. denied, Official Committee of Tort Claimants v. Dow Corning Corp.*, —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997). This court having determined that the present matter is a core proceeding, mandatory abstention under 28 U.S.C. § 1334(c)(2) is inappropriate. *See In re De-Lorean Motor Co.*, 155 B.R. at 524–25. *See*

*also Steinberg v. Esposito (In re Pioneer Development Corp.)*, 47 B.R. 624, 628 (Bankr. N.D.Ill.1985) (commenting that "abstention would be totally unwarranted" when there has been a determination that a proceeding is core).

■■■ Under subsection (c)(1) of § 1334, a court may abstain from hearing either core or non-core matters "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 426 (Bankr.S.D.Tex.1987) ("[P]ermissive abstention is available in core as well as noncore proceedings."). As noted by Chief Judge Stair in his excellent discussion of permissive abstention in the recent *Best Reception Systems* opinion, one primary factor to consider in deciding whether to abstain from hearing a core proceeding is the extent to which state law issues predominate over bankruptcy issues. *In re Best Reception Systems, Inc.*, 220 B.R. at 955. Indeed, on this point the plaintiff argues that the very nature of these claims, state law causes of actions for malicious prosecution and defamation, call for resolution by the state court. While the court acknowledges that state courts have more experience in dealing with such claims, the court cannot ignore the fact that this case also involves the assertion by the defendant of immunity under federal law. Because this case presents a peculiar issue concerning the extent of immunity enjoyed by a bankruptcy trustee, the court concludes that this issue predominates the state law issues and the court will not abstain. Accordingly, the plaintiff's motion for abstention will be denied.

## IV.

■■■ Finally, the court will consider the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Fed.R.Bankr.P. 7012(b), which asserts that both the malicious prosecution and defamation claims contained in the complaint must be dismissed on the grounds of absolute or quasi-judicial immunity since the defendant acted in his capacity as trustee and as an

officer of the court.[9] "Motions to dismiss under Rule 12(b)(6) are designed to test 'whether a cognizable claim has been pleaded in the complaint.'" *Dillihunt v. Hitchcock,* 32 F.Supp.2d 1001, 1002–03 (W.D.Tenn.1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). "Dismissal of a complaint for failure to state a claim streamlines litigation by 'dispensing with needless discovery and factfinding.'" *Id.* (quoting *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, accept as true the factual allegations in the complaint, and determine whether the plaintiff undoubtedly could prove no set of facts in support of his claims that would entitle him to relief. *See Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). A complaint need only give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.* Although this standard is extremely liberal, the plaintiff may not simply assert legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Id.* Of course, the burden of demonstrating that a complaint does not state a claim is on the moving party. *See, e.g., Riumbau v. Colodner (In re Colodner),* 147 B.R. 90, 92 (Bankr.S.D.N.Y.1992).

In the present case, the plaintiff asserts that the defendant's claim of absolute immunity is "preposterous." He maintains that at best a trustee has a "qualified" immunity which protects him when acting pursuant to court order and that absent a court directive, a trustee is held to the reasonable person standard. *See* plaintiff's memorandum citing, *inter alia, Boullion v. McClanahan,* 639 F.2d 213, 214 (5th Cir.1981) (trustee, as arm of the court, having sought and obtained court approval of his actions, was entitled to derived immunity) and *In re Cee Jay Discount Stores, Inc.,* 171 B.R. 173, 175 (Bankr. E.D.N.Y.1994) (although trustee derives limited immunity as court-appointed party, trustee may be held personally liable for negligent failure to perform duties). The plaintiff argues that if the trustee had wanted to insulate himself from liability, he should have submitted the matter to the bankruptcy court for approval before making the criminal referral and that since he failed to do so, no immunity attaches. Finally, the plaintiff concedes that defamation liability cannot be incurred for statements made in the course of judicial or quasi-judicial proceedings, but asserts the record is inadequate to establish that the allegedly defamatory statements were made during the course of judicial proceedings.

A few years ago in *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994), the Sixth Circuit Court of Appeals considered the question of whether a probate court administrator was entitled to absolute immunity. In making this determination, the court stated the following regarding absolute immunity:

> It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction. [Citations omitted.] Moreover, absolute judicial immunity has been extended to non-judicial officers who perform "quasi-judicial" duties. [FN5] [Citations omitted.] Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. [Citations omitted.]

---

9. The defendant also contends that the alleged defamatory statements were made in the course of judicial proceedings and therefore he enjoys immunity under state law. *See R.C. Jones v. Trice,* 360 S.W.2d 48, 50 (Tenn.1962) (general rule is that statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged) and *Lambdin Funeral Service, Inc. v. Griffith,* 559 S.W.2d 791, 792 (Tenn.1978) ("The absolute privilege holds true even in those situations where the statements are made maliciously and corruptly."). The court need not address this issue in light of the disposition of the action based upon federal common law immunity.

FN5. The United States Supreme Court has recognized the need for government officials to be able to make impartial decisions without the threat of personal liability for actions taken pursuant to their official duties. *See, e.g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)(agency attorney); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)(judge); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)(legislators).

The Supreme Court has endorsed a "functional" approach in determining whether an official is entitled to absolute immunity. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542–43, 98 L.Ed.2d 555 (1988); *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547(1991). Under this approach, a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.' " *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209(1993) (quoting *Forrester,* 484 U.S. at 229, 108 S.Ct. at 545). For example, a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. *Id.* On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available. *Id.*

*Bush,* 38 F.3d at 847. *See also Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) ("[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.").

The United States Supreme Court has stated that in applying the functional approach to immunity issues, a court must not only examine the nature of the functions with which the official has been entrusted but also "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester,* 484 U.S. at 224, 108 S.Ct. at 542. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* at 486–87, 111 S.Ct. at 1939. The Supreme Court has been "quite sparing" in its recognition of absolute immunity and has refused to extend it any "further than its justification would warrant." *Id.* at 487, 111 S.Ct. at 1939.

In this court's view, the trustee's obligation to report perceived violations of federal law to the United States attorney and to cooperate with any ensuing investigation and prosecution is one of those "tasks so integral or intertwined with the judicial process" that the trustee should be "considered an arm of the judicial officer who is immune." It must be noted that 18 U.S.C. § 3057 imposes criminal referral obligations not only on trustees but also on judges and receivers. *See Kittay v. Battle Fowler (In re Stockbridge Funding Corp.),* 153 B.R. 654, 656 (Bankr.S.D.N.Y. 1993) ("The duties of a bankruptcy trustee under [§ 3057] are the same as those of a bankruptcy judge."). Thus, it would appear that acts taken pursuant to the obligations contained therein are "judicial in nature." *See Bush,* 38 F.3d at 847 ("[T]he central issue ... necessarily becomes whether [the defendant's] acts in question can be considered judicial in nature.").

Furthermore, a trustee who makes a criminal referral is in many respects analogous to a prosecutor. *See In re Stockbridge Funding Corp.,* 153 B.R. at 656 ("Under the statutory scheme created by 18 U.S.C. § 3057(a) respecting bankruptcy related crimes, a bankruptcy trustee ... is a part of law enforcement as much as an assistant United States attorney or an F.B.I. agent."). The plaintiff accuses the defendant of "initiat[ing] or procur[ing] the criminal proceedings" against him. Yet, it is well established that when these functions are performed by a prosecutor, the prosecutor is protected by absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993).

Moreover, the reasoning which supports full immunity from malicious prosecution actions for prosecutors applies equally to trustees:

> [T]he risk of injury to the judicial process from a rule permitting malicious prosecution suits against prosecutors is real. There is no one to sue the prosecutor for an erroneous decision Not to prosecute. If suits for malicious prosecution were permitted, the prosecutor's incentive would always be not to bring charges.

*Imbler v. Pachtman,* 424 U.S. 409, 438, 96 S.Ct. 984, 998, 47 L.Ed.2d 128 (1976) (concurring opinion).

Similarly, if trustees are subject to suit and liability for their actions in reporting possible criminal violations to the prosecuting authorities, no trustee would ever make a referral. No trustee would run the risk of damages being assessed against him for making a referral based on often incomplete information which produces no monetary benefit to the trustee since a trustee's primary obligation is to collect and liquidate assets of the estate, not report crimes. Yet a trustee is in a unique position to discover possible bankruptcy crimes since his duties require him to "investigate the financial affairs of the debtor." *See* 11 U.S.C. § 704(4). To expose a trustee to the potential for liability for complying with his obligations under 18 U.S.C. § 3057 would emasculate an important public function which a trustee is in a distinct position to fulfill.

One of the justifications offered for according absolute immunity to prosecutors is that "built-in safeguards diminish the need for private redress against prosecutorial abuse." *Gray v. Bell,* 712 F.2d 490, 498 (D.C.Cir. 1983).

> Inherent in the judicial process are checks that serve to restrain prosecutorial abuse, and any abuse that does occur is subject to various self-remedying mechanisms of the adversarial process.... [T]he prosecutor's absolute protection, like that of the judge from which it is derived, is both justified and bounded by the judicial traditions and procedures that limit and contain the danger of abuse.... [T]he circumstances typically provide alternative instru-

ments of the judicial branch to check misconduct—the discretion of the grand jury, the procedures of a trial, and the potential sanction of discipline imposed by the court itself.

*Id.* These same safeguards, along with a significant additional one—an investigation and independent review by the United States attorney—greatly lessen the possibility that an innocent party will be harmed by a misguided or even malicious trustee.

Although no other reported decision has specifically addressed the issue of the scope of a trustee's immunity in making a criminal referral, various courts have concluded that acts within the ambit of bankruptcy trustee's official duties are protected by absolute immunity. For example, in *Walton v. Watts (Matter of Swift),* 185 B.R. 963 (Bankr. N.D.Ga.1995), the bankruptcy court concluded that full immunity protected an acting United States trustee from a counterclaim which alleged, *inter alia,* libel and slander, after the trustee had filed an adversary complaint seeking the disgorgement of fees paid by a chapter 11 debtor to nonlawyers for legal assistance regarding the debtor's impending bankruptcy filing. *Id.* at 969. As explained by the court:

> [T]he trustee's conduct in bringing the present adversary proceeding is inexorably intertwined with this Court's function of conserving the Debtor's assets for distribution. [Citations omitted.] As such, the Trustee's quasi-judicial conduct merits absolute immunity.

*Id.* at 970 n. 7.

Similarly, in *Howard v. Leonard,* 101 B.R. 421 (D.N.J.1989), the district court dismissed a negligence action against a United States trustee, concluding that regardless of whether the U.S. trustee had been negligent in his supervision of the estate, his activities were within the course of his judicial role and thus protected by absolute immunity. *Id.* at 423. One commentator has noted that "[a]lthough both *Howard* and *Swift* involved United States trustees, their reasoning is easily extended to the front-line bankruptcy trustee." Ralph C. McCullough, *Trustee Liability: Is There Enough Protection For These "Arms*

*of The Court?"* 103 COM. L.J. 123, 138 (Summer 1998).

In *Weissman v. Hassett,* 47 B.R. 462 (S.D.N.Y.1985), a chapter 11 trustee was sued for libel and other intentional torts by relatives of the debtor's president based on statements made by the trustee in an investigative report prepared pursuant to 11 U.S.C. § 1106(a)(3) and (4) and disseminated by court order. *Id.* at 464–65. The court noted that while a trustee's position will not immunize him from suit for torts committed in conducting the business affairs of a bankrupt company, trustees and receivers acting as officers of the court to conserve the bankrupt estate's assets are immune from suit. *Id.* at 466. The court reasoned that because conducting the investigation required by § 1106(3) was part of the trustee's duty to assemble the bankrupt estate and the issuance of a report a necessary concomitant to the investigation, the trustee was protected from any liability arising from his investigation and report. *Id.* at 467. The court further observed that "[d]istribution of the Trustee's report furthered an important public purpose" and that "[s]ound policy also counsels immunizing the [trustee]." *Id.*

> The plaintiffs here seek more than $25 million in damages and contend that the Trustee can be personally liable for that amount. Even a remote prospect of personal liability of such a magnitude could not help but lessen the vigor with which future reorganization trustees will pursue their obligations to uncover wrongdoing and report on potential claims held by a bankrupt estate.

*Id.*

Based on the foregoing analysis that the function performed by a bankruptcy trustee in reporting possible criminal violations to the United States attorney is judicial in nature, that there are adequate safeguards to reduce the possibility of harm to an innocent party, and that subjecting a trustee to liability in this instance would deter the trustee from complying with his obligations under 18 U.S.C. § 3057, this court concludes that the defendant is protected by absolute immunity from the plaintiff's malicious prosecution action.

These same considerations also insulate the defendant from liability with respect to the second count of the complaint, defamation of character. In the second count, the plaintiff relies on the factual and legal allegations in the first count, which include, *inter alia,* that "[a]t all times material to the criminal charges against Joseph B. Kirk, the defendant, William T. Hendon was the bankruptcy trustee for the relevant estate, and the principal witness against the plaintiff" and that the defendant "initiated or procured the criminal proceedings against the plaintiff." The second count of the complaint adds the additional allegation that "[t]he defendant communicated to persons other than the plaintiff defamatory statements concerning the plaintiff" which "were the allegations of criminal misconduct against the plaintiff." No specific allegations regarding the place, context, or the precise content of the alleged defamatory statements are pled. As the second count of the complaint expressly incorporates the first count, the court can only assume that the defamatory statements which alleged criminal misconduct occurred while the defendant was "initiat[ing] or procur[ing] the criminal proceedings against the plaintiff" and acting as "the principal witness against the plaintiff." Just as prosecutors and witnesses are immune from defamation liability for any statements which arise out of or are incidental to the initiation or presentation of judicial proceedings, see *Buckley,* 509 U.S. at 277, 113 S.Ct. at 2617 (prosecutors entitled to absolute immunity from defamation liability for statements made during the course of judicial proceedings and relevant to them) and *Dillihunt,* 32 F.Supp.2d at 1002–04 (doctrine of absolute immunity shields witnesses from liability both for testimony at trial and before grand jury); a trustee performing these functions should be similarly immune.

Before leaving the subject of immunity, the court believes it is appropriate to distinguish the authorities cited by the plaintiff in support of his assertion that the defendant is not protected in this action by immunity. It is this court's observation that the case law regarding trustee liability is extremely confusing and often contradictory, with the result that it is difficult from the caselaw alone to formulate guidelines specifying when a trustee is immune from personal liability and when he is not. *Compare, e.g., Mullis v.*

U.S. Bankr. Court for Dist. of Nev., 828 F.2d 1385, 1390 (9th Cir.1987) (bankruptcy trustee has absolute quasi-judicial immunity from damages unless actions were performed in the clear absence of all jurisdiction); *Bennett v. Williams*, 87 B.R. 122, 124 (S.D.Cal.1988), *aff'd*, 892 F.2d 822 (9th Cir.1989) (trustee immune from action alleging breach of fiduciary duty and negligence) and *In re Cee Jay Discount Stores, Inc.*, 171 B.R. at 175 ("Although a trustee derives a limited immunity as a court appointed party, negligence of the trustee is not immune."). Fortunately, an excellent law review article provided the court a path through the morass of caselaw on this issue. *See* Daniel B. Bogart, *Liability of Directors of Chapter 11 Debtors in Possession: "Don't Look Back—Something May Be Gaining On You,"* 68 AM. BANKR.L.J. 155, 202–208 (Spring 1994). Professor Bogart opines that "courts confuse the doctrine of derived judicial immunity from suit, that protects trustees and other court officers against liability from suit by nonbeneficiaries of the bankruptcy trust, when acting within the scope of their authority, with standards of care that trustees owe to beneficiaries of the estate." *Id.* at 202. He explains that only beneficiaries of the bankruptcy trust,

those being the debtor, shareholders, and creditors, may sue a trustee for the breach of his fiduciary duty because it is only to these entities that the fiduciary obligations are owed.[10] *Id.* at 204–205. When a third party nonbeneficiary of the bankruptcy estate is harmed by actions of the trustee, any liability must be based in some relationship other than a fiduciary obligation, *i.e.*, tort or contract.[11] *Id.* "[I]t is only in this context that it is appropriate to ask whether the trustee, as an officer of the court, may be immune from suit." *Id.* at 205. The only exception to this rule, *i.e.*, the only time the trustee is immune from suit by beneficiaries of the estate, is when the trustee is acting pursuant to specific instructions from the court. *Id.* at 208 (citing *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096 (9th Cir.1986) and *Boullion*, 639 F.2d 213).

All of the cases cited by the plaintiff in support of his argument that the defendant is not immune from suit and is personally liable if he is negligent in the performance of his duties involved beneficiaries of the bankruptcy estate and are not applicable to the facts of the present case which concerns a suit by a third party nonbeneficiary. *See Mosser v. Darrow*, 341 U.S. 267, 270, 71 S.Ct. 680, 681,

10. The courts are divided over whether the trustee must negligently or willfully breach a fiduciary duty to interested parties in order for liability to attach. *See* McCullough, 103 COM. L.J. at 129–32. While the Sixth Circuit Court of Appeals along with the Fourth, Seventh and Tenth circuits hold that trustees can only be held personally liable for injuries arising from willful and deliberate conduct, three circuits, the Second, Ninth and Eleventh, subject trustees to personal liability for negligent breaches of fiduciary duties. *Id.* (citing *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir.1982); *Yadkin Valley Bank & Trust Co. v. McGee*, 819 F.2d 74 (4th Cir.1987); *In re Chicago Pac. Corp.*, 773 F.2d 909 (7th Cir.1985) (dicta); *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir.1977); *In re Gorski*, 766 F.2d 723 (2d Cir.1985); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339 (9th Cir.1983) and *Red Carpet Corp. of Panama City Beach v. Miller*, 708 F.2d 1576 (11th Cir.1983)).

11. Professor Bogart's article explains that although a bankruptcy trustee incurs liability to third party nonbeneficiaries in precisely the same ways and under the same circumstances as any other individual incurs liability, a trustee is generally protected by derived judicial immunity as long as he was acting within the scope of his authority. Bogart, 68 AM. BANKR.L.J. 205–206.

*See also*, McCullough, 103 COM. L.J. at 140 ("[I]t seems readily clear that trustees are immune for their actions so long as they pertain to their duties, in any form, as bankruptcy trustees."). Although there is authority for the proposition that this derived immunity is absolute immunity, the better rule, in light of the fact that absolute immunity is a matter of function rather than identity, is that this is qualified judicial immunity. *See Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir.1967) (in action by third party for wrongfully possessing property which is not an asset of the estate, trustee is immune if he acted in good faith and had reasonable grounds and probable cause); *In re Rollins*, 175 B.R. .69, 77 n. 7 (Bankr.E.D.Cal.1994) ("If a trustee incurs a contract or tort liability to someone other than the debtor or a creditor of the estate, he is entitled to a qualified judicial immunity.") (dicta); McCullough, 103 COM. L.J. at 140 ("[T]rustee enjoys qualified judicial immunity by virtue of his position. . . .") and Bogart, 68 AM. BANK L.J. at 206 ("[W]hen a nonbeneficiary of the bankruptcy estate challenges some action of the trustee, the trustee's actions are entitled to the benefit of qualified judicial immunity."). Thus, the court's ruling today that the defendant in this action is protected by absolute immunity is based solely on the particular function performed by the trustee in this case.

95 L.Ed. 927 (1951) (action by successor trustee on behalf of the estate against former reorganization trustee); *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 753 (4th Cir.1993) (debtors and creditor alleged that chapter 7 trustee was negligent in failing to expeditiously conduct sale of debtor's farm and dairy equipment); *Barrows v. Bezanson (In re Barrows)*, 171 B.R. 455, 456 (Bankr.D.N.H.1994) (action by debtors against trustee alleging that lawsuits which were assets of the bankruptcy estate were not handled properly) and *In re Cee Jay Discount Stores, Inc.*, 171 B.R. at 175 (issue of trustee's performance before the bankruptcy court in the context of trustee's motion for approval of his law firm as his attorneys).

The court having concluded that the defendant in this instance is protected by absolute immunity,[12] his motion to dismiss will be granted. An order will be entered in accordance with this memorandum opinion.

---

**12.** Absolute immunity defeats a suit at the outset so long as the official's actions were within the scope of the immunity, and thus frees the defendant from any obligation to justify his actions. *Gray*, 712 F.2d at 496. *See also Bush*, 38 F.3d at 847 ("Absolute ... immunity ... refers to protection from suit and not simply the assessment of liability."). As such, absolute immunity excuses even allegations of bad faith, malice, or gross error. *Weissman*, 47 B.R. at 465 (citing *Gray*, 712 F.2d at 496).