In re PREMIER HOTEL DEVELOP-
MENT GROUP d/b/a Hospitality Con-
sultants, The Carnegie Hotel, Austin
Spring Spa & Salon, and Lagos; Pre-
mier Investment Group d/b/a Premier
Investments; and Samuel T. Easley,
Debtors.

Smith Mechanical Contractors,
Inc., Plaintiff,

v.

Premier Hotel Development Group, a
Tennessee General Partnership; the
Public Building Authority of the City
of Johnson City, Tennessee; First
Tennessee Bank National Association;
K. Newton Raff, Trustee; and Barker
Building Company, Inc., Defendants,

and

Barker Building Company, Inc.,
Third–Party Plaintiff,

v.

Premier Investment Group, a Tennessee
General Partnership; Easley Family
Limited Partnership; Samuel T. Eas-
ley; and Christopher R. Hannah,
Third–Party Defendants,

and

Premier Hotel Development Group,
Third–Party Plaintiff,

v.

Traveler's Casualty & Surety Company
Of America, Third–Party
Defendant.

Bankruptcy Nos. 01–20923,
01–20940, 01–20922.
Adversary No. 01–2021.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 2, 2001.

Robert M. Bailey, Bailey, Roberts & Bailey, P.L.L.C., Knoxville, TN, for Smith Mechanical Contractors, Inc.

James W. Elliott, Jr., Regina W. Calabro, Elliott Lawson & Pomrenke, Bristol, VA, for Barker Building Company, Inc.

P. Edward Pratt, Suzanne H. Bauknight, Baker, Donelson, Bearman & Caldwell, Knoxville, TN, for First Tennessee Bank National Association and K. Newton Raff, Trustee.

Fred. M. Leonard, Bristol, James R. Kelley, Neal & Harwell, PLC, Nashville, TN, for Premier Hotel Development Group.

## MEMORANDUM

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

This adversary proceeding is presently before the court on motions to abstain and/or remand filed by the plaintiff, Smith Mechanical Contractors, Inc. ("Smith"), and one of the defendants and third-party plaintiffs, Barker Building Company, Inc. ("Barker"). For the reasons discussed hereafter, the motions will be granted. Resolution of these motions is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). *See Beneficial Nat'l Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.)*, 220 B.R. 932, 941 (Bankr.E.D.Tenn.1998).

### I.

In the complaint filed by Smith on August 30, 2000, in the Chancery Court for Washington County, Tennessee, Smith alleges that it entered into a subcontract dated February 9, 1999, with Barker for materials and work in connection with the construction of the Carnegie Hotel in Johnson City, Tennessee. Smith states that as of the date of the subcontract, the property upon which the Carnegie Hotel was located was owned by Premier Hotel Development Group, L.L.C. ("Premier LLC"), but effective December 31, 1999, Premier LLC merged into Premier Hotel Development Group, a Tennessee general partnership ("PHDG"). Thereafter on March 23, 2000, PHDG conveyed the Carnegie Hotel property to the Public Building Authority of the City of Johnson City, Tennessee ("PBA of Johnson City"), who by agreement dated that same day, leased the property back to PHDG and provided PHDG an option to repurchase the Carnegie Hotel property for $10. Also on March 23, 2000, PHDG executed a deed of trust in favor of First Tennessee Bank National Association ("First Tennessee") to secure a loan in the principal amount of $8,250,000. Defendant K. Newton Raff is the trustee under the deed of trust.

Smith alleges in the complaint that it fully complied with the subcontract, but that the sum of $979,282.71, out of a total subcontract amount of $3,127,098.63, remains due and owing to it. Smith states that because of this unpaid balance, it filed a "Notice of Intention to Claim Lien" against the property and against the leasehold interest of PHDG with the register's office for Washington County, Tennessee. Smith requests in the complaint that it be granted a judgment against Barker for $979,282.71 plus costs and prejudgment interest and, to the extent PHDG has not paid Barker for the work performed by Smith, that Smith be granted a judgment against PHDG. Smith requests that an attachment issue and be levied on the Carnegie Hotel property so that its lien may be enforced, that the property be sold, and that Smith's interest in the Carnegie Hotel property be declared superior to any interests held by the defendants, including First Tennessee's deed of trust.

In response to Smith's complaint, Barker filed on October 17, 2000, an answer, cross-claims against the other defendants and a third-party complaint against the general partners of PHDG and Premier Investment Group ("Premier Invest-

ment").[1] In the answer, Barker admits that the sum of $979,282.71 remains unpaid to Smith, but denies that Smith has fully completed its work under the subcontract. Barker also denies that Smith's lien rights are entitled to priority over the lien rights of Barker.

In its cross-claims and third-party complaint, Barker asserts that on January 20, 1999, it entered into a building contract with Premier LLC to administer and manage the construction of the Carnegie Hotel and that after substantial completion of the contract, the total amount remaining unpaid to Barker and its subcontractors as of May 2000 was $3,604,138.32, which sum was secured by a mechanic's lien on the Carnegie Hotel Property. Barker alleges that at the closing on March 23, 2000, when PHDG transferred title for Carnegie Hotel to the PBA of Johnson City, obtained a lease in return, and granted First Tennessee a deed of trust, Barker entered into a subordination agreement wherein Barker agreed to subordinate its lien to that held by First Tennessee (the "Subordination Agreement"). Barker alleges that it entered into the Subordination Agreement in reliance on promises made by PHDG, Premier Investment, Samuel Easley and First Tennessee that Barker would receive payment of all sums owed it in connection with the completion of Carnegie Hotel.

Barker alleges that subsequently on June 30, 2000, when the sums owing to it and its subcontractors remained unpaid, Barker entered into a settlement agreement with PHDG and Premier Investment whereby the sums due Barker and its sub-

contractors, with the exception of Smith, were reduced in return for immediate payment and a release by all parties (the "Settlement Agreement"). Barker asserts that Smith was not included in this settlement because Smith was to be paid directly by Mr. Easley or his companies, PHDG and Premier Investment, but that the settlement was conditioned upon Smith's release of Barker and its surety, Traveler's Casualty & Surety Company of America ("Traveler's"), from any liability under Smith's subcontract.

Based on these set of facts, Barker asserts thirteen different counts which it claims entitles it to judgment against the cross-defendants and third-party defendants. In *Count I* which is premised on breach of contract, Barker seeks a declaration that the Settlement Agreement is null and void due to the failure to pay Smith and that because of this nullity, Barker is entitled to a judgment against PHDG and Premier Investment, along with their general partners, Messrs. Easley and Hannah and the Easley Family Limited Partnership, for the entire sum which was previously due Barker under the construction contract. In *Counts II, III* and *IV*, which are based on theories of intentional misrepresentation, innocent misrepresentation, and conspiracy, Barker requests judgments against Mr. Easley, First Tennessee, PHDG and Premier Investment, and the general partners of PHDG and Premier Investment, based on allegations that these parties fraudulently induced Barker to enter into the Subordination Agreement. In *Counts VI, VII, VIII, IX*

---

**1.** Barker alleges that PHDG is a Tennessee general partnership comprised of Premier Investment Group, L.L.C. and the Easley Family Limited Partnership, and that effective December 31, 1999, Premier Investment Group, L.L.C. merged into Premier Investment, a Tennessee general partnership comprised of

Samuel T. Easley and Christopher R. Hannah. As the caption of this adversary proceeding indicates, Barker's third-party action is against Premier Investment, the Easley Family Limited Partnership and Messrs. Easley and Hannah.

and *X,* Barker asks that the Subordination Agreement be rescinded. In *Count XI,* Barker seeks a declaratory judgment that its mechanic's lien is valid and superior to that of First Tennessee's deed of trust while in *Counts V* and *XII,* Barker requests that the court issue an attachment and order the Carnegie Hotel property sold in enforcement of Barker's lien. Lastly, in *Count XIII,* Barker alleges that it is entitled to a judgment against PHDG and Premier Investment based on a theory of unjust enrichment in that "the conduct of [PHDG, Premier Investment] and Easley has resulted in PHDG, the Public Building Authority, and Easley being unjustly enriched by the goods and services provided by Barker to [PHDG] and the Public Building Authority for the construction of the Carnegie Hotel, for which Barker has yet to be paid . . . ."

In response to the cross-claim filed against it by Barker, PHDG filed on November 3, 2000, its own cross-claim against Barker and its own third-party complaint against Traveler's. PHDG alleges therein that Barker has violated the Settlement Agreement by failing and refusing to perform various punch list items required to complete construction of the hotel. As such, PHDG states that it is entitled to a judgment against Barker for the damages suffered by PHDG as a result of Barker's breach of contract. With respect to the third-party claim against Traveler's, PHDG alleges that Traveler's issued a payment bond with respect to the hotel project and that to the extent Smith is awarded any relief against PHDG, PHDG is entitled to equal recovery against Traveler's.

Subsequently on February 21, 2001, Barker filed a motion in the chancery court requesting permission to amend its cross-claim against PHDG and its third-party complaint against Premier Investment by adding a fourteenth count based on unjust enrichment. Barker states that the Settlement Agreement contained one paragraph wholly unrelated to the construction contract which concerned a building in Kingsport, Tennessee owned by Downtown Improvement Company L.L.C. Barker alleges that under the Settlement Agreement, Barker was required "to eliminate [PHDG and Premier Investment] from all liabilities of Downtown, LLC . . . and required [PHDG and Premier Investment] in return to transfer to Barker all of [PHDG's and Premier Investment's] 50% interest in Downtown LLC." Barker states in the motion that it has complied with its obligations but PHDG and Premier Investment have not, which has resulted in PHDG's and Premier Investment's alleged unjust enrichment.

Before the chancellor could rule on the motion to amend, PHDG and Mr. Easley filed voluntary petitions under chapter 11 of the Bankruptcy Code on March 15, 2001, and Premier Investment filed its chapter 11 petition on March 19, 2001.[2] The state court action initiated by Smith was then removed to this court by PHDG on April 16, 2001. Subsequent to the bankruptcy filings but prior to the removal, First Tennessee filed motions on April 9, 2001, in the chancery court requesting leave to file a third-party complaint against Traveler's and to consolidate a pending action which First Tennessee simultaneously commenced against Traveler's in the Washington County Chancery Court, docket no. 34123. These motions

---

**2.** An order for joint administration of the three bankruptcy cases was entered by the court on May 10, 2001.

were also not acted on by the chancellor in light of the bankruptcy filings.[3]

In response to the removal of the state court action, Smith filed a Fed. R. Bankr.P. 9027(e)(3) statement wherein it averred that this proceeding is non-core, but that it consented to entry of final orders or judgment by the bankruptcy judge in the event the proceeding remains in bankruptcy court. In its Rule 9027(e)(3) statement, Barker did not indicate whether the action was core or non-core, but did state that it did not consent to entry of final orders or judgment by the bankruptcy judge in non-core proceedings. In First Tennessee's Rule 9027(e)(3) statement, it asserted that Smith's claims, Barker's cross-claims, and PHDG's cross-claim are core proceedings, but that PHDG's third-party claim and First Tennessee's proposed third-party claim are non-core, related. First Tennessee also indicated that it would consent to entry of final orders or judgment by the bankruptcy judge in any non-core matters.

In a statement filed in response to the Rule 9027(e)(3) statements, PHDG asserted that this proceeding is core under 28 U.S.C. § 157 as it "involves actions concerning the administration of the debtor's estate as well as counter claims by the estate against an entity filing a claim against the estate as well as determination of validity, extent and priority of liens." PHDG also consented to entry of final orders or judgment by the bankruptcy judge in the event the court determines that this action is a non-core proceeding. Similarly, the PBA of Johnson City agreed

that this action is core although it consented to the entry of final orders or judgment by the bankruptcy judge to the extent the court concludes otherwise.

On May 15, 2001, Smith filed the motion for abstention and/or remand which is presently before the court. As the basis for its motion, Smith argues that this proceeding is non-core and that the court has no jurisdiction over the cross-claims and third-party action to which the debtors are not parties and has only "related to" jurisdiction over the claims in which the debtors are involved. Smith contends that the issues in this case "are purely state law claims best adjudicated in state court ... [which] has the ability and expertise to resolve these matters." Smith notes that subsequent to PHDG's bankruptcy filing, both Smith and First Tennessee commenced separate actions in the Washington County Chancery Court against Traveler's and that unless this court abstains and/or remands the case, inconsistent judgments could result. Lastly, Smith argues that "retention of this case would place a substantial burden on the bankruptcy court docket as it is estimated that the case will take between one to two weeks to try."

Thereafter, on June 7, 2001, Barker filed a motion for remand and/or abstention, noting as did Smith that the removed action involves "purely state law issues" and the pendency in state court of the two companion cases by Smith and First Tennessee against Traveler's. Barker asserts that this court does not have subject mat-

---

**3.** Two additional motions were also pending upon removal of this action from state court. On February 21, 2001, Barker filed a motion for partial summary judgment requesting a determination as a matter of law that the Settlement Agreement is unenforceable in light of PHDG's and Premier Investment's "failure to obtain Smith Mechanical's release

of Barker and its surety Traveler's from any and all liability arising under Smith's subcontract with Barker...." Barker also filed on April 9, 2001, a motion to sever its cross-claim against First Tennessee in light of the automatic stay imposed by the debtors' bankruptcy filings.

ter jurisdiction over the non-debtor parties and states that at the time of the removal, the action had been set for trial and "the parties were in the midst of substantial discovery." As such, Barker argues that "the state court lawsuit should be remanded in the interest of judicial economy and to avoid inconsistent judgments entered concerning the issues in the removed lawsuit." First Tennessee has filed memoranda of law in opposition to Smith's and Barker's motions. PHDG has also filed responses in opposition to the motions.

## II.

■ The law of abstention is set forth in 28 U.S.C. § 1334(c) which provides:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

As previously observed by this court:

Subsection (c)(1) addresses those situations when courts may abstain from hearing a proceeding while subsection (c)(2) defines those situations when courts must abstain from hearing a proceeding. The former is known as permissive abstention while the latter is referred to as mandatory abstention.

*Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 60 (Bankr.E.D.Tenn.1999) (quoting *In re Best Reception Systems, Inc.*, 220 B.R. at 942). Smith and Barker assert that under the facts of the present case, mandatory abstention is required or that alternatively, the court should exercise its discretion to permissively abstain.[4]

■ The requirements for mandatory abstention were set forth by the Sixth Circuit Court of Appeals in the *Dow Corning* bankruptcy case. As stated by the court therein:

[F]or mandatory abstention to apply to a particular proceeding, there must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

*Lindsey v. Dow Chemical Co. (In re Dow Corning Corp.)*, 113 F.3d 565, 569 (6th Cir.1997).

■ Because mandatory abstention does not apply to core proceedings as the foregoing elements establish, the parties' memoranda of law primarily address the

---

4. Although the movants question the court's jurisdiction to adjudicate this proceeding, "the abstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance. [Citations omitted.] To paraphrase, § 1334(c)(2) requires the district court to abstain from hearing a non-core matter which can be timely adjudicated in state court in a previously commenced action. The act of abstaining presumes that proper jurisdiction otherwise exists." *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 708 (2d Cir. 1995).

nature of this adversary proceeding: whether it is core or non-core. The court will similarly address this criteria first before considering the remaining required elements for mandatory abstention.

The core/non-core distinction, of course, pertains to the scope of this court's jurisdiction.[5] The statutory basis for the district court's jurisdiction over bankruptcy matters is set forth in 28 U.S.C. § 1334, which grants the district court original and exclusive jurisdiction over "all cases under title 11," *see* 28 U.S.C. § 1334(a); and original but not exclusive jurisdiction of "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157 of title 28 of the United States Code characterizes two of these categories, proceedings arising under title 11 and arising in cases under title 11, as "core proceedings." *See* 28 U.S.C. § 157(b)(1). *See also In re Heinsohn*, 231 B.R. at 55 (citing *In re Best Reception Systems, Inc.*, 220 B.R. at 942). While none of these phrases is defined in the Bankruptcy Code, 28 U.S.C. § 157(b)(3) does state that "a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." Also, 28 U.S.C. § 157(b)(2) sets forth a non-exclusive list of examples of core proceedings. Included in this list are "determinations of the validity, extent, or priority of liens," § 157(b)(2)(K); "matters concerning the administration of the estate," § 157(b)(2)(A); "allowance or disallowance of claims against the estate...," § 157(b)(2)(B); and "counterclaims by the estate against persons filing claims against the estate," § 157(b)(2)(A).

 Judge Stair observed in *Best Reception Systems* that in evaluating whether a matter is core or non-core for abstention purposes, it is necessary to separately scrutinize each cause of action and ground for relief in the complaint. *In re Best Reception Systems, Inc.*, 220 B.R. at 945–46. Comparing the prayers for relief in Smith's complaint in the instant case with the illustrative list of core proceedings in 28 U.S.C. § 157(b)(2), it is clear that the majority of Smith's original action involves core matters. Smith asserts a mechanic's lien against the Carnegie Hotel, which is property of the estate, and requests a determination that its interest in the Carnegie Hotel property is superior to any interests held by the defendants. As noted, "determinations of the validity, extent, or priority of liens" are core proceedings. *See* 28 U.S.C. § 157(b)(2)(K). *See also Marriott Family Restaurants, Inc. v. Lunan Family Restaurants (In re Lunan Family Restaurants)*, 194 B.R. 429, 440 (Bankr.N.D.Ill.1996) ("Adjudicating competing claims of creditors to the property of a bankruptcy is the central function of bankruptcy law."); *In re Zachman Homes, Inc.*, 83 B.R. 633, 638 (Bankr.D.Minn.1985) (proceeding where parties dispute the validity, priority, and extent of liens against property of the bankruptcy estate necessarily "arises in" a bankruptcy case and is thus subject to the court's core jurisdiction).

Furthermore, Smith requests that the Carnegie Hotel property be sold in order

---

**5.** As this court discussed in the *Heinsohn* decision, the core/non-core dichotomy pertains to the scope of a bankruptcy judge's power. *In re Heinsohn*, 231 B.R. at 56. In core proceedings, a bankruptcy judge is vested with full judicial power and thus may enter final orders and judgments. With respect to non-core proceedings, however, "the bankruptcy judge acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. [Citation omitted.] The bankruptcy judge may not enter final judgments without the consent of the parties, and the bankruptcy court's findings of fact and conclusions of law are subject to *de novo* review by the district court." *Id.*

to satisfy its lien. A requested sale of property of the estate is a core proceeding because it is a "matter concerning the administration of the estate." *See* 28 U.S.C. § 157(b)(2)(A). *See also Maricopa County v. PMI–DVW Real Estate Holdings, L.L.P. (In re PMI–DVW Real Estate Holdings, L.L.P.)*, 240 B.R. 24, 28 (Bankr. D.Ariz.1999) (even though county's condemnation action against property of the debtor was based on state law, it was a core proceeding because the county was attempting through its state court proceedings to use, sell, or otherwise liquidate assets of the estate); *General Instrument Corp. v. Financial and Bus. Serv., Inc. (In re Finley)*, 62 B.R. 361, 367 (Bankr. N.D.Ga.1986) (bankruptcy court had jurisdiction over removed state law attachment action as "proceeding . . . constitute[d] a matter 'arising under' a provision of Title 11 since it involve[d] both the determination and allowance of claims against the estate and interest in the estate property").

■ Smith also requests in its complaint a judgment against PHDG for the amount owed to Smith under its subcontract with Barker. In order to collect this amount from PHDG in its bankruptcy case, Smith filed a proof of claim for $979,282.71, the amount sought in the complaint, and affixed a copy of the complaint to the claim form in order to set forth the basis for the claim. "[W]here a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C.A. § 157(b)(2)(B)." *In re Best Reception Systems, Inc.*, 220 B.R. at 944.

■ The only other remaining prayer in Smith's complaint is its request that the court grant Smith a judgment against Barker, a non-debtor defendant, for the sum owed to it under the subcontract. Generally, a suit between two non-debtors does not qualify as a core proceeding under 28 U.S.C. § 157(b). *Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 538 (S.D.N.Y.1998). Smith's state law action against Barker for breach of contract neither arises under title 11 nor arises in a case under title 11. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987) ("[A] procedure is core . . . if it invokes a substantive right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case."); *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("A proceeding 'arises under' the Bankruptcy Code if it asserts a cause of action created by the Code . . . [while] [p]roceedings 'arising in' a bankruptcy case are those that could not exist outside of a bankruptcy case . . . ."). Accordingly, this aspect of the present adversary proceeding is non-core.

■ The court next turns to a consideration of whether the cross-claims and third-party complaint filed by Barker are core or non-core. Again, it is evident that the majority of the causes of action brought therein are core. In *Count I*, Barker seeks a declaration that the Settlement Agreement is null and void due to the failure to pay Smith and a judgment against the cross and third-party defendants for the sum due Barker under the construction contract. This count, like *Counts II, III, IV* and *XIII* wherein Barker asserts other bases for relief against the cross-defendants, are core proceedings as to the three debtors because Barker has filed a proof of claim in each of their bankruptcy cases asserting these same claims. *Counts VI, VII, VIII, IX,* and *X,* which seek rescission of the Subordination Agreement, are also core because the validity of that agreement must be deter-

mined in order for the court to determine the priority of liens on the Carnegie Hotel property. *See Resolution Trust Corporation v. Best Products Co. (In re Best Products Co.)*, 68 F.3d 26, 31 (2d Cir.1995) ("While enforcing subordination agreements is not listed as a core proceeding, the power to prioritize distributions has long been recognized as an essential element of bankruptcy law."); *Fourth Branch Assoc. v. Mohawk Paper Mills, Inc. (In re Kings Falls Power Corp.)*, 185 B.R. 431, 439 (Bankr.N.D.N.Y.1995) ("Resolving subordination disputes is part of the process of ordering the estate for purposes of distribution and is integral to the restructuring of debtor-creditor and creditor-creditor relations.").

For the same reason, *Count XI*, which seeks a declaratory judgment that Barker's mechanic's lien is valid and superior to that of First Tennessee's deed of trust, is a core proceeding. *Counts V and XII*, wherein Barker requests that the court issue an attachment and order the Carnegie Hotel property sold in enforcement of Barker's lien, are core matters like Smith's similar requests.

The only remaining aspects of Barker's cross-claims and third-party complaint are its requests in *Counts I, II, III, IV and XIII* for judgments against parties other than PHDG, Premier Investment and Mr. Easley based on breach of contract, intentional misrepresentation, innocent misrepresentation, conspiracy, and unjust enrichment. As previously noted, Barker's actions as to the three debtors are core because Barker has filed proofs of claims in their cases asserting the same grounds for relief. However, with respect to the other defendants, the PBA of Johnson City, First Tennessee, K. Newton Raff, the Easley Family Limited Partnership and Christopher R. Hannah, the proceeding is non-core to the extent

Barker seeks money judgments against these parties because Barker's claims do not arise solely in the context of a bankruptcy case nor were they not created by the Bankruptcy Code.

As stated previously, prior to the removal of the state court action, Barker filed a motion to amend its cross-claim and third-party complaint by adding a *Count XIV* which asserts an unjust enrichment claim against PHDG and Premier Investment concerning Downtown Improvement Company L.L.C., a Tennessee limited liability company of which Premier Investment is a member. In the event that the amendment is permitted, it appears that this cause of action will be non-core. Barker has not filed a proof of claim against either PHDG or Premier Investment with respect to these allegations. This is simply a prepetition state law cause of action against these debtors which neither arises out of their bankruptcy cases nor was created by the Bankruptcy Code. As such, it would be a non-core proceeding. *See Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 747–48 (Bankr. E.D.Pa.1996) (the filing of a proof of claim asserting different claims than those asserted in prepetition state court litigation does not convert the prepetition litigation into a core proceeding).

The other remaining aspect of this adversary proceeding is PHDG's cross-claim against Barker and PHDG's third-party complaint against Traveler's. Because Barker has filed a proof of claim against PHDG setting forth the same allegations as Barker's cross-claim, PHDG's own cross-claim against Barker is in effect a counterclaim. One of the examples of a core proceeding listed in 28 U.S.C. § 157(b)(2)(C) is "counterclaims by the estate against persons filing claims against the estate." Accordingly, PHDG's cross-claim is a core proceeding. *See Allen v.*

*City Finance Co.*, 224 B.R. 347, 352 (S.D.Miss.1998) (claims asserted in a complaint filed by the debtor against a creditor who had filed proofs of claim "were, in essence, counterclaims" against the creditor).

■■■ On the other hand, Traveler's has not filed a claim against PHDG. PHDG's third-party action against Traveler's neither involves a cause of action created or determined by a statutory provision of title 11 nor is it a claim that arises only in a bankruptcy case. As such, it is non-core.[6]

To summarize, the aspects of this adversary proceeding which are non-core are Smith's claim for a judgment against Barker, Barker's request for judgment against the non-debtor cross and third-party defendants, and PHDG's claim against Traveler's. In light of the conclusion that some aspects of this adversary proceeding are non-core and, thus, possibly subject to mandatory abstention, the court will examine whether the remaining elements necessary for mandatory abstention are present. As noted previously, these requirements are that a proceeding: "(1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; [and] (4) be capable of timely adjudication." *In re Dow Corning Corp.*, 86 F.3d 482 at 497 (6th Cir.1996).

■■■ There is no doubt but that the first three of these criteria are met in this case. The non-core matters are based on state law; there is no federal jurisdictional basis absent the bankruptcy filings by PHDG, Premier Investment and Mr. Easley; and these issues were originally commenced in a state court with jurisdiction. The only remaining issue is whether the matters are capable of timely adjudication in state court. In *Midgard Corp.* the Bankruptcy Appellate Panel for the Tenth Circuit observed:

The phrase "timely adjudication" is not defined in the Bankruptcy Code. Courts interpreting this phrase have focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case. [Citations omitted.] This focus is in accord with the fact that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d at 994, *quoted in Celotex*, 514 U.S. [300] at [308], 115 S.Ct. at 1499; *see* H.R. No. 595, 95th Cong., 1st Sess. 43–48 (1978)[, U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6004-08].

In considering whether allowing a case to proceed in state court will adversely affect the administration of a bankruptcy case, courts have considered some or all of the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; [footnote omitted] (6) whether a jury demand has been made; [footnote omitted] and (7) whether the

---

**6.** Of course, if the state court were to grant either of First Tennessee's pending motions to consolidate its existing state court action against Traveler's or for leave to file a third-party complaint against Traveler's, that additional action involving only these two non-debtor parties would likewise be non-core.

underlying bankruptcy case is a reorganization or liquidation case. [Citations omitted.]

*In re Midgard Corp.*, 204 B.R. at 778–79.

Of these seven factors, the Panel opined that the last one was the most important in considering whether the administration of the bankruptcy case would be impaired by adjudication in state court. *Id.* at 779.

> Where a Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize. Lengthy delays in collecting outstanding accounts or resolving other claims which might substantially enhance the viability of the estate, may prove fatal to reorganization efforts. Therefore, in considering whether or not to abstain, timely adjudication necessarily weighs heavily for a Chapter 11 debtor. [Quoting] *World Solar*, 81 B.R. at 612. On the other hand, in a chapter 7 case or a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant.

*Id.*

Applying these factors to the instant case, the court observes that Barker argues in its memorandum that while the action was in state court, "written discovery had commenced and a trial date had been set for May 11, 2001." Although this court doubts that a trial of this action would have taken place in state court on May 11, 2001, even if PHDG had not filed for bankruptcy relief, this court has no reason to believe that the non-core aspects of this case can not be adjudicated by the state court in a timely manner even though no representations have been made as to whether the state court suffers from a backlog. Furthermore, because Barker has not consented to the entry of final judgment and orders by this court in non-core matters, this court can only submit proposed findings of fact and conclusions of law to the district court, a step which will of course add to the time required for resolution of this action. Lastly, the court does recognize that the underlying bankruptcy cases are chapter 11 rather than chapter 7 liquidation. Even so, PHDG along with the other two debtors filed a joint proposed liquidating plan which contemplates a sale of the Carnegie Hotel property and a drop-dead deadline by which First Tennessee will have relief from the automatic stay if confirmation is not achieved by that date. From a review of the plan as proposed, it does not appear that either confirmation or the proper administration of these bankruptcy cases will be affected by having the non-core matters decided by the state court since those claims are not even addressed in the plan. Accordingly, based on all of the foregoing, this court must abstain from hearing the non-core matters involved in this adversary proceeding.

▮▮▮▮ With respect to the core proceedings which are not subject to mandatory abstention under 28 U.S.C. § 1334(c)(2), the court will examine whether permissive abstention under 28 U.S.C. § 1334(c)(1) should be exercised since the movants assert alternatively that both mandatory and permissive abstention apply. "Under subsection (c)(1) of § 1334, a court may abstain from hearing either core or non-core matters 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *In re Heinsohn*, 231 B.R. at 60 (quoting *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 426 (Bankr. S.D.Tex.1987)).

In determining whether permissive abstention is appropriate, courts commonly

look to the following factors: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re Best Reception Systems,* 220 B.R. at 953.

 Several of these factors are similar to the requirements for mandatory abstention and thus have already been addressed. For instance, it has been previously discussed that this adversary proceeding primarily involves state law issues and that there is no federal jurisdictional basis other than that provided by the removal statute. Although the determination of the validity and priority of claims and the allowance of claims against the debtors are core proceedings as this court has previously discussed, they are matters which just as easily could be determined by the state court as shown by the fact that this lawsuit was

originally commenced there. On the other hand, the state law issues which must be addressed in this action are not difficult or unsettled and resolution of these issues would not unduly burden this court's docket, despite movants' estimation of a potential one to two week trial. There has been no request for a jury trial and there is no indication that the removal of this action was motivated by anything other than PHDG's legitimate desire to have all matters resolved in bankruptcy court as a part of its reorganization.

While the foregoing factors are easily addressed and appear to cancel each other out, the remaining factors, in this court's view, give the court pause as to the appropriate resolution of the motions to abstain: the effect of abstention on the orderly administration of the underlying bankruptcy cases, the presence of the related proceedings in state court, the feasibility of severing the state law issues from the bankruptcy matters which must be decided by this court, and the presence in this adversary proceeding of non-debtor parties. In opposition to the abstention request, First Tennessee argues that it will be virtually impossible for PHDG to reorganize or for the Carnegie Hotel property to be marketed and sold without a determination by this court of the various liens' validity and priority. First Tennessee asserts that as such, there will be an "impossibility of administration" if this court abstains. In support of this proposition, First Tennessee cites *Small v. Elliott–Ottinger Constr. Co. (Matter of Phillips House Assoc., Inc.),* 64 B.R. 912 (Bankr. W.D.Mo.1986), wherein the court invoked this doctrine to retain jurisdiction to determine the lien priorities in the debtor's primary asset even though the debtor had no equity in the property.

First Tennessee is correct that the court in *Phillips* retained jurisdiction to determine the priority of two conflicting liens based on the argument that the bankruptcy court's determination was necessary to the administration of the bankruptcy estate. *Id.* at 915–16. Nonetheless, there are significant differences between the present case and Phillips. The mandatory abstention statute, 28 U.S.C. § 1334(c)(2), was inapplicable in *Phillips* because the *Phillips* bankruptcy case was commenced prior to the statute's effective date. *Id.* at 916. The only matter before the *Phillips* court was a core proceeding involving the priority of liens; there were no non-core claims such as in the present case concerning attempts by non-debtor parties to obtain judgments against other third-parties, from which the court is required to abstain. If the core matters are tried in this court and the non-core issues are tried in state court, the parties to this action will incur the expense of separate lawsuits and run the risk of inconsistent judgments. Presumably, the evidence that Smith will introduce to establish the PHDG's liability will in large part be identical to proof that Smith would proffer in order to prevail against Barker. Similarly, Barker's evidence regarding the Subordination Agreement will be the same whether presented in the core proceedings against the debtors in this court or in the non-core proceedings against First Tennessee and others which must be tried in state court. To require the parties to fight these battles on two fronts is inefficient and expensive.

Furthermore, the argument that this court must retain jurisdiction because resolution of the core proceedings is central to the administration of PHDG's estate is inapplicable to the present case due to the nature of the debtors' proposed plan. As noted, rather than a reorganization the plan is in essence a liquidating one providing for the sale of the Carnegie Hotel property. And, although it would ordinarily be difficult to market and sell such property absent a determination by this court as to the validity and priority of the various liens, the accompanying disclosure statement to the plan recites that "the Debtors and First Tennessee [have] negotiated a procedure that can transfer title to a purchaser without first resolving the lien priority issues." The debtors' proposed plan provides for the Carnegie Hotel property to be sold at a foreclosure sale by First Tennessee free and clear of all liens that would be extinguished by a foreclosure and that in the event a court determines that the liens asserted by Smith and Barker are superior to that held by First Tennessee, those claimants would have claims against First Tennessee and would be paid by Lawyer's Title Insurance Company, the insurer of First Tennessee's deed of trust. In light of this proposed procedure, administration of the debtors' bankruptcy cases would not be adversely affected if the state court rather than the bankruptcy court resolves the lien priorities. And, once the state court determines the lien priorities, the parties' claims can be paid pursuant to the debtors' reorganization plan. *See Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 426 (Bankr.S.D.Tex.1987) ("Where a claim asserted against an estate involves legal issues in which state law predominates, a claim can be litigated in state court to the point of judgment, with enforcement of the judgment stayed until further order of the bankruptcy court."). Weighing all of the factors involved, this court concludes that the interests of justice would be best served by this court abstaining from hearing the issues raised in this adversary proceeding.

 In light of the court's decision, remand of this proceeding to the state

court from which it was removed is appropriate. Remand of removed proceedings is governed by 28 U.S.C. § 1452(b) which provides in pertinent part that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground...." "The presence of factors suggesting discretionary abstention pursuant to 1334(c)(1) and factors requiring mandatory abstention under 1334(c)(2) provides ample equitable grounds for remand of the lawsuit to state court." *Roddam v. Metro Loans, Inc. (In re Roddam)*, 193 B.R. 971, 981 (Bankr.N.D.Ala.1996) (citing *Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487, 494 (E.D.La.1990) ("[T]he considerations underlying discretionary abstention and remand are the same.")). "Accordingly, where the facts before the court mandate or compel abstention, equitable grounds for remand exist under § 1452(b) and remand of the proceeding to state court is favored." *In re Best Reception Systems*, 220 B.R. at 958.

### III.

An order will be entered in accordance with this memorandum opinion remanding this adversary proceeding to state court from which it was removed and lifting the automatic stay [7] in order to allow the parties to proceed to judgment in the state court action. The order shall further provide that any enforcement of a judgment against the debtors, PHDG, Premier Investment or Mr. Easley, or against property of the estate shall remain subject to the automatic stay provisions of the Bankruptcy Code and the jurisdiction of this court.

---

7. An agreed order was entered on June 22, 2001, allowing the court to determine Smith's motion for relief from stay in conjunction with its motion for abstention and/or remand.